UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRELL WESLEY, | |
|     Petitioner, | No. 20 C 03189 |
|     v. | Judge Thomas M. Durkin |
| ANTHONY WILLS, Warden, Menard Correctional Center, | |
|     Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Terrell Wesley filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2013 conviction for first-degree murder in the Circuit Court of Cook County. Respondent filed his Rule 5 Answer, arguing that Petitioner's claim is meritless under § 2254(d). For the reasons that follow, the Court denies and dismisses the petition with prejudice and declines to issue a certificate of appealability.

**Background**

I.    <u>Trial and post-trial motion</u>

The facts as to Petitioner's trial are taken from the Illinois Appellate Court's opinion in *People v. Wesley*, 2015 IL App (1st) 130710-U, 2015 WL 3855601 (Ill. App. Ct. June 22, 2015), and are not in dispute. On July 17, 2008, Everitt Brown was shot to death at a grocery store in Maywood, Illinois. Petitioner was indicted in the Circuit Court of Cook County on a charge of first-degree murder for Brown's killing. R. 25-14. Petitioner pled not guilty, and the case proceeded to a bench trial.

1

Several witnesses testified as to what they had seen at the time Brown was killed. Dwayne Ross and Larry Gates each testified they saw an African-American man in a white shirt with "stringy-like hair" or dreadlocks walking backwards while pointing a gun at the grocery store. The man then got into the passenger seat of a black Pontiac. Neither saw the man's face.

Jason Ervin testified that he heard three or four gunshots, then saw a man walking backwards away from the grocery store with a gun pointed at the store before getting into a black Pontiac with a female driver. He said Petitioner was wearing a white shirt and had short dreadlocks. Ervin wrote down the Pontiac's license plate and called the police. Ervin identified Petitioner as the man he had seen. Another witness testified he was almost in an accident with a black car driven by a black woman who was "driving crazy," and that he reported the license plate number to police.

The license plate was traced to Shara Cannon, Petitioner's girlfriend at the time of the shooting. At trial, Cannon denied having been with Petitioner or seeing him with a gun on the day of the shooting. She testified that she did not remember her grand jury testimony. Cannon said that police had told her things would be easier if she cooperated—*i.e.*, named Petitioner as the shooter. Cannon reviewed a written statement but had been in custody for more than 24 hours when she signed it.

Cannon's grand jury testimony was admitted as substantive evidence under 725 ILCS 5/115-10.1. Cannon testified before the grand jury that on the day of the shooting, she had been driving with Petitioner, who was wearing a white shirt.

2

Petitioner told her to stop at a convenience store, so she dropped him off and continued to drive for a little while before returning to pick him up. She then picked up Leon Thomas and drove everyone to her own house. Once there, the group was joined by several others, including Pierre Robinson and Delvin Williams. At some point, Cannon heard Petitioner say that he had tapped on a window, a guy had run into the store, and that Petitioner pointed and shot.

Robinson was a longtime friend of Petitioner's. He testified at trial that Petitioner and Williams were not with the group at Cannon's house. He admitted to appearing before the grand jury but denied giving certain answers. Robinson later said that the police had threatened to charge him with murder and had given him a script to use before the grand jury.

Robinson's grand jury testimony was also admitted as substantive evidence. Robinson told the grand jury that he met up with Petitioner at Cannon's home. According to Robinson, Petitioner eventually learned that the shooting victim had died and said that no witnesses were going to tell on him now. Petitioner also said that his gun had jammed initially, and the victim had run into the store, but that he came back out to taunt Petitioner, who was "messing with the gun" and was then able to shoot the victim.

At the close of the State's case, the defense moved for a directed verdict. The court heard argument and denied the motion. Petitioner elected not to testify, and the trial was continued. The next day, the trial court stated it had reviewed the evidence and exhibits and stated several findings:

3

> [L]ooking at the evidence, you have a man pointing his gun outside of the store. He is running backwards. He has been identified by one witness. He had the gun in his hand, and he was trying to put it back under his shirt. He was wearing a white T-shirt. These facts have been corroborated. You have him getting into a vehicle, where there is some issue as to whether he got into the passenger's side or the driver's side. The Court would find in many cases there are discrepancies. However, he got-he did get into a car that was identified.
>
> With regard to the physical evidence, there were holes through the door. There were there was [sic] a bullet and fragments found in the body of the victim. There were two shell casing found by the door.
>
> In addition, with regard to the grand jury testimony, the court would accept the impeached parts as the—the impeaching testimony as substantive evidence and it further ties up this case with regard to the testimony of Shara [Cannon] and also Robinson.
>
> For all these reasons, the Court would make a finding of guilty in this case.

*Id.* at *3; R. 32.

Defense counsel then reminded the court that the parties had not presented closing arguments but had only argued a motion for a directed finding at the close of the State's case. The court apologized and indicated it would let the parties argue. The State asked if that was the court's ruling on the directed finding and the court said it was. The defense rested and the parties presented their closing arguments.

The court again found Petitioner guilty of murder. It stated it had considered the parties' "lengthy closing arguments" as well as the "testimony which the witnesses on various details corroborate each other with regard to hairstyles, with regard to the clothes that the defendant was wearing, with regard to the car, with regard to a person pointing a gun and walking backwards from the store, with regard to identification" and the grand jury testimony of Cannon and Robinson. The court

4

found that Cannon and Robinson's trial testimony was not credible, but that their grand jury testimony was properly admitted as substantive impeaching evidence.

Petitioner filed a motion and supplemental motion for new trial, arguing among other things that the court erred in finding him guilty prior to closing arguments. The court denied the motion, saying:

> [The Court's] indication of the way that [it] was going to rule, that was premature and it was immediately brought to [the court's] attention at which point we had lengthy closing arguments.
>
> As counsel is aware, there were also lengthy arguments for the motion for directed finding in this case. And while [the court] was incorrect in making the way [the court] was going to rule, [it] did hear the complete closing arguments and . . . reconsidered everything that was brought to [its] attention in those closing arguments, and it was on that basis that [the court] made [its] final ruling.

*Wesley*, 2015 WL 3855601, at *3. The court sentenced Wesley to 50 years' incarceration.

II. <u>Direct Appeal</u>

Petitioner appealed his conviction to the Illinois Court of Appeals. There he argued that his right to a fair trial and his right to counsel were denied by the court's pre-judging the case before allowing the parties to present closing arguments. The Court of Appeals affirmed the judgment of the trial court, finding that the trial court had acknowledged its mistake, permitted the parties to make closing arguments, and reiterated its finding after consideration of those arguments. *Id.* at *5. It further held that any error in the trial court's "prejudging" the case was harmless. *Id.*

Petitioner raised the same issue in his motion for leave to appeal to the Illinois Supreme Court, which was denied. *People v. Wesley*, 39 N.E.3d 1010 (Ill. 2015)

5

(unpublished table decision). The Supreme Court then denied certiorari. *Wesley v. Illinois*, 578 U.S. 907 (2016) (Mem.).

III. Post-Conviction Petition

Petitioner timely filed a *pro se* post-conviction petition in the Circuit Court of Cook County. *People v. Wesley*, 158 N.E.3d 295, 300 (Ill. App. Ct. 2019). The petition alleged that the trial court's admission of Cannon and Robinson's prior inconsistent statements was a constitutional error, and that his trial and appellate counsel were ineffective for failing to raise this issue. The circuit court summarily dismissed the petition. Petitioner appealed that dismissal via a motion for leave to file a late notice of appeal. The appellate court granted leave but affirmed the judgment of the circuit court. *Id.* at 304. The Illinois Supreme Court denied leave to appeal. *People v. Wesley*, 140 N.E.3d 253 (Ill.) (unpublished table decision).

Petition filed a *pro se* petition for habeas corpus on or about May 24, 2020. After Respondent answered, Petitioner retained counsel and obtained written consent from Respondent to file the instant amended petition, which he filed on April 30, 2021.[1]

## Legal Standard

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

---

[1] Respondent's Answer to the original petition contended that it was barred by the statute of limitations. Petitioner thereafter provided an affidavit establishing an earlier filing date. Respondent has accordingly dropped his time-bar defense. R. 35, at 7 n.1.

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to federal law if the state court applied a rule that is opposite from the law established by the United States Supreme Court, or if the state court decides a case differently than the United State Supreme Court did in a case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's application of federal law is unreasonable if it correctly identifies the governing legal principle but unreasonably applies it to the facts of a particular case. *Id.* at 407.

## Analysis

Petitioner's sole argument for habeas relief relates to the state court's alleged denial of his Sixth Amendment right to counsel and to present a defense when it made factual findings of guilt before Petitioner had an opportunity to make a closing argument. Petitioner contends that the Illinois appellate court unreasonably applied the rule from *Herring v. New York*, 422 U.S. 853 (1975). In *Herring*, the Supreme Court invalidated a state law that gave a judge in a nonjury criminal trial discretionary authority to "deny counsel any opportunity to make a summation of the evidence before the rendition of judgment." *Id.* at 853. Observing that "closing argument for the defense is a basic element of the adversary factfinding process in a

7

criminal trial," the Court held that "total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense," in violation of the Sixth Amendment. *Id.* at 858-59. The Supreme Court has since indicated that the right to present closing argument is so central to defense counsel's role to "assist[ ] the accused during a critical stage of the proceeding" that denial of this right is a constitutional error requiring reversal even absent a showing of prejudice. *See United States v. Chronic*, 466 U.S. 648, 659 n.25 (1984).

Petitioner contends that the principle in *Herring* encompasses the circumstances of his trial. In his view, the trial judge's announcement of certain factual findings—including a statement that the court "would make a finding of guilty"—before closing argument was the "legal and functional equivalent of a complete denial of the right." R. 32, at 18. He cites to several lower court cases that have applied *Herring* to find a constitutional violation where a trial judge announces a verdict or finding before closing argument, then reiterates that finding after allowing argument. *See Spence v. State*, 463 A.2d 808 (Md. 1983); *Nickels v. State*, 81 N.E.3d 1092 (Ind. Ct. App. 2017); *cf. State v. Gilman*, 489 A.2d 1100 (Me. 1985) (finding constitutional violation where trial judge announced verdict without opportunity for closing argument but offered to vacate the verdict and reopen the case for argument in response to motion for new trial).

The Court is initially skeptical that Petitioner's "application" of *Herring* to this case is really an application and not an extension. "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was

8

not 'clearly established at the time of the state-court decision.'" *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). Granted, § 2254(d)(1) does not require courts to wait for an "identical factual pattern" before applying a legal rule. *Id.* at 427 (quoting *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)). But *Herring* spoke of the complete denial of a defendant's right to present a summation at the close of evidence. *See* 422 U.S. at 863 ("[T]here can be no justification for a statute that empowers a trial judge to deny absolutely the opportunity for any closing summation at all."). That did not occur here—at most Petitioner says it was the "legal and functional equivalent." Construing "deny absolutely" to include scenarios in which a defendant is *actually able* to present argument reads much more as an extension than an application. The Illinois Court of Appeals recognized this disconnect when it held that *Herring* did not require automatic reversal in cases of premature announcement of judgment. *See People v. Little*, 129 N.E.3d 113, 124 (Ill. App. Ct. 2018) ("If automatic reversal is to be required in *this* context, the rule will have to be justified by different considerations than those offered in *Herring*.").

Even if *Herring* nominally applies here, Petitioner's citation to state court decisions endorsing his view of *Herring* is of limited value, as such decisions do not constitute "clearly established Federal law, as determined by the Supreme Court." *Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017). And as noted, other courts have reached the opposite conclusion while citing *Herring*, including the state where Petitioner was convicted. *See People v. Daniels*, 366 N.E.2d 1085 (Ill. App. Ct. 1977) (finding no

violation of the *Herring* principle where trial judge entered guilty finding without argument but immediately permitted argument upon request of defense counsel); *United States v. Price*, 795 F.2d 61 (10th Cir. 1986) (holding that no violation results from premature announcement of finding so long as the record shows that the trial judge was willing to keep an open mind through closing arguments); *see also Little*, 129 N.E.3d at 124 (rejecting argument that *Herring* requires automatic reversal in the event of premature judgment and holding that "[r]eopening a case for closing argument is an adequate remedy for a premature judgment when the record shows that the judge was willing to hear the defense's argument with an open mind"). This muddled decisional landscape effectively precludes habeas relief, which is available only if the state court's adjudication of a claim resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). It is clear that Petitioner's interpretation of *Herring* as applied to this case is far from universal and has never been endorsed by the United States Supreme Court. This is a sufficient basis for denying his petition.

Finally, as to the core merits of Petitioner's claim, the Court does not find a violation of his Sixth Amendment rights. The reasoning in *Little* is persuasive. As the Illinois Court of Appeals observed, *Herring* says only that a defendant may not be absolutely denied the right to present a summation at the close of evidence. It does not "indulge the fantasy that a trier of fact will suspend all judgment until the last word is uttered in rebuttal argument." *Little*, 129 N.E.3d at 126. The true Sixth

Amendment concern is whether the trial court, acting as factfinder, maintained an open mind and a *willingness* to be persuaded through closing arguments. *See id.* at 124.

The record here indicates the trial court maintained that open mind. After prematurely announcing its findings, the court immediately apologized and permitted the parties to present their arguments. It then re-announced its verdict, stating on the record that it had considered the parties' "lengthy closing arguments." The fact that Petitioner's summation was unsuccessful in swaying the court to his side does not equate to a denial of his right to present it. *See Herring*, 422 U.S. at 863 ("And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be 'likely to leave (a) judge just where it found him.'" (quoting R. Jackson, The Struggle for Judicial Supremacy 301 (1941))).

## Certificate of Appealability

The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Proceedings provides that the district court "must issue of deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez v. Thaler*, 565 U.S. 134, 143 n.5 (2012). To obtain a certificate, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th

Cir. 2011). Here, the Court's denial of the petition rests on the application of well-settled precedent, particularly as it pertains to whether the state court's adjudication of Petitioner's claim constituted an "unreasonable application of clearly established Federal law." Accordingly, certification of Petitioner's claim for appellate review is denied.

## Conclusion

For the foregoing reasons, the petition is denied and the Court declines to issue a certificate of appealability.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: February 24, 2022